Case 1:22-cv-01337-DAE   Document 24   Filed 04/19/23   Page 1 of 8

FILED
April 19, 2023
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY: _____PG_____
                  DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| YETI Coolers, LLC, <br><br> Plaintiff, <br><br> vs. <br><br> Mercatalyst, Inc., and <br> TerraCycle US, LLC, <br><br> Defendants. | Civil Action No. 1:22-cv-01337-RP |
| Mercatalyst, Inc., <br><br> Third-Party Plaintiff, <br><br> vs. <br><br> United National Closeout Stores, Inc., <br><br> Third-Party Defendant, | |

### THIRD-PARTY COMPLAINT:

Defendant/Third-Party Plaintiff, Mercatalyst, Inc. f/k/a A Mediocre Corporation ("Mercatalyst") complains of Third-Party Defendant United National Closeout Stores, Inc. ("UNCS") and states as follows:

*Parties*

1. Defendant/Third-Party Plaintiff Mercatalyst is a Texas corporation that is authorized to do business in the State of Texas.

2. Third-Party Defendant UNCS. is a corporation that is incorporated under the laws of the State of Florida and may be served with process through its registered agent Todd S.

Hartstone, 1471 NE 26 Street, Suite 200, Ft. Lauderdale, Florida 33305 or wherever he may be found.

### *Jurisdiction and Venue*

3. The jurisdiction of this Court over the subject matter of this action is predicated on 28 U.S.C. § 1332. The parties are diverse and the amount in controversy exceeds $75,000, exclusive of interest and cost.

4. The Court has subject matter jurisdiction over Mercatalyst's state law claims under 28 U.S.C. § 1367(a) because they are so related the claims in this proceeding that they form part of the same case or controversy under Article III of the United States Constitution.

5. Additionally, some of the claims against UNCS arise from the claims of YETI which arise under the Trademark Act of 1946, 15 U.S.C. §§ 1051, et. seq. Accordingly, this Court has subject matter jurisdiction over those claims pursuant to 28 U.S.C. §§ 1331, 1338(a) & (b), and 15 U.S.C. §1121(a).

6. The Court has personal jurisdiction over UNCS because it is purposefully and intentionally availing itself of the privileges of doing business in the State of Texas including this district. Among other things, (i) UNCS markets the products it sales in the State of Texas including this district; (ii) UNCS has contracted with a Mercatalyst (a Texas company) and agreed to jurisdiction in Texas; and (iii) as a result of representations made by UNCS, Mercatalyst marketed goods in Texas including this district.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1392 because a substantial part of the events or omissions giving rise to this lawsuit occurred in this district.

### *Factual Background*

8.       The underlying lawsuit focuses upon the sale of YETI puffer jackets by Mercatalyst (the "Jackets"). The Jackets were sold to Mercatalyst by UNCS. UNCS sells and distributes products acquired from third parties including surplus inventory and overstock items. The Jackets were part of UNCS's normal stock and were sold in the normal course of UNCS's business.

9.       The purchase was subject to the Mediocre Supplier Agreement (the "Indemnity Agreement") executed between UNCS and Mediocre Corporation on August 8, 2017. Mediocre Corporation changed its name to Mercatalyst, Inc. on January 22, 2020.

10.      The Indemnity Agreement provides that UNCS (referred to as supplier) shall provide clean and clear title with respect to the Jackets among other things:

> b. Supplier possesses clean and clear title to, and has the unencumbered right to sell, each and every one of the Products supplied or to be supplied to Mediocre;
> c. none of the Products shall or will constitute unfair competition or infringe, invade, misappropriate or otherwise violate, directly or indirectly, any intellectual property (including, but not limited to any patent, trade secret, copyright, trademark or trade dress) or any right of any person or entity of any kind or nature whatsoever;
> d. each and every one of the Products supplied to Mediocre are and will be genuine and authentic products of the brands represented to Mediocre and are not counterfeit replicas, imitations, copies, "look-alikes", "fakes", "knock-offs" or Products that otherwise constitute infringements of a third party's trademarks or trade dress;

11.      Additionally, the Indemnity Agreement provides a robust indemnity provision:

5. <u>Indemnification</u>. Supplier shall defend, hold harmless and indemnify Mediocre, each of its officers, directors, employees, agents, affiliates, successors and assigns, and any subsequent purchaser of Products (each a "Mediocre Indemnitee" and, collectively, the "Mediocre Indemnitees") from and against any loss, damage, liability, penalty, claim, demand, suit, cause of action, legal proceeding, debt, cost or expense (including reasonable attorneys' fees) ("Loss") imposed upon, incurred by, or asserted against any of the Mediocre Indemnitiees that in any way arises out of or is related to (1) any and all claims, demands, suits, causes of action or legal proceedings by any third party or parties that arises out of, relates to, is based upon or contains any fact or allegation: (i) that, if true, would constitute a breach by Supplier of its representations, warranties or covenants, including without limitation, under this Agreement or any Purchase Order; (ii) that the Products constitute unfair competition or infringe, invade, misappropriate or otherwise violate, directly or indirectly, any intellectual property (including, but not limited to any patent, trade secret, copyright, trademark or trade dress) or any right of any person or entity; or (iii) that there are any defects in the Products, whether defects in design, workmanship, materials, manufacture or otherwise; or (2) injuries or damages sustained by any person, persons, or property that arises out of any act or omission of Supplier or the use or misuse of products manufactured, distributed, or sold by Supplier on behalf of or to Mediocre for resale by Mediocre, whether wholesale or retail. THE INDEMNIFICATION PROVIDED BY THIS SUBSECTION APPLIES TO LOSSES INVOLVING BREACH OF CONTRACT, STATUTE, WARRANTY, INDEMNITY, TORT (INCLUDING NEGLIGENCE, WHETHER SOLE, JOINT OR CONCURRENT, GROSS NEGLIGENCE, STRICT LIABILITY, PRODUCT LIABILITY OR SIMILAR OR RELATED CLAIMS) ARISING IN WHOLE OR IN PART FROM THE ACTS OR OMISSIONS OF THE INDEMNIFIED PARTY IN RELATION TO PRODUCTS MANUFACTURED, DISTRIBUTED OR SOLD BY SUPPLIER ON BEHALF OF OR TO MEDIOCRE FOR RESALE BY MEDIOCRE WHETHER WHOLESALE OR RETAIL. This paragraph shall survive the expiration or termination of this Agreement for any reason.

12. On November 21, 2022 (the Monday of Thanksgiving week), YETI contacted Mercatalyst and claimed the Jackets (along with Yeti totes) were stolen and requested that Mercatalyst stop selling the product.

13. On November 22, 2022, Mercatalyst requested that YETI provide proof of theft – which it did not. In fact, YETI never provided Mercatalyst any proof of the theft until the filing of this lawsuit.

14. That same day Mercatalyst representative Alex Lepp contacted UNCS and had communications with Domenic Spurio and Adele Harrington. Alex Lepp informed UNCS that YETI was alleging that the Jackets were stolen. Alex Lepp was assured by UNCS that the Jackets were not stolen. UNCS did not even acknowledge the possibility the Jackets were stolen until after this lawsuit was filed.

15. YETI also requested that Mercatalyst make an offer to sell the Jackets to YETI. Mercatalyst made an offer to YETI. Instead of responding to Mercatalyst's offer, YETI filed a police report.

16. Ultimately, Mercatalyst pulled down the Jackets from sale on November 25, 2022, the day after Thanksgiving.

17. On January 12, 2023, Mercatalyst sent a Demand for Indemnity to UNCS which included reference to the claims made by YETI in its Original Complaint and requested indemnification from UNCS pursuant to the Indemnity Agreement. UNCS has failed to adequately respond to Mercatalyst's demand.

## Count I
### Responsible Third Party

18. Mercatalyst incorporates herein and by reference, as if fully set forth, the allegations contained in the preceding paragraphs as if fully set forth below.

19. But for the representations and warranties of UNCS, Mercatalyst would have never sold the Jackets.

20. In the unlikely event Mercatalyst is found liable, UNCS is responsible for all or part of the damages as alleged by YETI pursuant to Chapter 33 of the Texas Civil Practice and Remedies Code or as otherwise provided for by Texas state or federal law.

## Count II

*Breach of Indemnity Agreement*

21. Mercatalyst incorporates herein and by reference, as if fully set forth, the allegations contained in the preceding paragraphs as if fully set forth below.

22. The Indemnity Agreement is a valid enforceable agreement. Mercatalyst has properly performed under the Indemnity Agreement. Mercatalyst has made a demand pursuant to the Indemnity Agreement. UNCS has breached the Indemnity Agreement by failing to provide indemnity. As a result, Mercatalyst has been damaged in an amount within the jurisdictional limits of the Court.

*Count III*
*Breach of Implied Warranty of Title*

23. Mercatalyst incorporates herein and by reference, as if fully set forth, the allegations contained in the preceding paragraphs as if fully set forth below.

24. UNCS sold YETI puffer jackets to Mercatalyst.

25. UNCS conveyed bad title to the Jackets to Mercatalyst, which was a breach of the implied warranty of title.

26. Mercatalyst notified UNCS of the breach of the warranty of title.

27. UNCS's breach of warranty directly and proximately caused injury to Mercatalyst, which resulted in damages within the jurisdictional limits of this Court.

*Count IV*
*Breach of Implied Warranty Against Infringement*

28. Mercatalyst incorporates herein and by reference, as if fully set forth, the allegations contained in the preceding paragraphs as if fully set forth below.

29. UNCS, a merchant seller, sold YETI puffer jackets to Mercatalyst.

30. The goods were subject to a third party's rightful claim of infringement, which was a breach of the implied warranty against infringement.

31. Mercatalyst notified UNCS of the breach of the warranty against infringement.

32. UNCS's breach of warranty directly and proximately caused injury to Mercatalyst, which resulted in damages within the jurisdictional limits of this Court.

## Count V
### Recovery of Attorneys' Fees and Expenses

33. Mercatalyst incorporates herein and by reference, as if fully set forth, the allegations contained in the preceding paragraphs as if fully set forth below.

34. Mercatalyst seeks its reasonable and necessary attorneys' fees from UNCS pursuant to the terms of the Indemnity Agreement, Texas Civil Practice and Remedies Code §38.001 et seq., or otherwise provided for by Texas law.

### Request for Relief

Mercatalyst requests that the Court award it a judgment within the jurisdictional limits of the Court; pre-judgment and post-judgment interest as permitted by Texas law; reasonable attorneys 'fees, such other and further relief both at law and in equity to which it may be justly entitled.

DATED:    April 13, 2023.

Respectfully Submitted,

*/s/ Robert K. Radcliff*
ROBERT K. RADCLIFF
Texas State Bar No. 2401170
CHRIS VALENTINE
Texas State Bar No. 24104313

**WEINSTEIN RADCLIFF PIPKIN LLP**
8350 N. Central Expressway, Suite 1550
Dallas, Texas 75206
Telephone: 469.629.5300
Facsimile: 214.865.6140
Email:     rradcliff@weinrad.com
           cvalentine@weinrad.com

**ATTORNEYS FOR DEFENDANT/THIRD-PARTY PLAINTIFF MERCATALYST, INC.**

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on April 13, 2023, the undersigned electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send notice of electronic filing to all counsel of record.

*/s/ Robert K. Radcliff*
Robert K. Radcliff