IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| **Yeti Coolers, LLC,** *Plaintiff* | § § § | |
| **v.** | § § § § | **Case No. 1:22-CV-01337-DAE** |
| **Mercatalyst, Inc.,** *et al.*, *Defendants* | | |

### ORDER

Now before the Court are Plaintiff Yeti Coolers, LLC's Motion to Compel Production from Defendant Mercatalyst, Inc., filed June 23, 2023 (Dkt. 44); Mercatalyst's Response (Dkt. 56); and Yeti's Reply (Dkt. 61). By Text Order entered June 26, 2023, the District Court referred Yeti's motion to this Magistrate Judge for resolution, pursuant to 28 U.S.C. § 636(b)(1)(A), Federal Rule of Civil Procedure 72, and Rule 1(c) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas. The Court held a hearing on the motion on August 9, 2023, and has considered the supplemental material submitted by both parties. Dkt. 68; Dkt. 70.

### I. Background

Yeti brings claims against Mercatalyst for trademark infringement and dilution, unfair competition, false advertising, and conversion. Yeti alleges that it contracted with another defendant, TerraCycle US, LLC, to destroy and recycle thousands of YETI-branded jackets it never released and discontinued styles of backpacks and tote bags, but the YETI-branded goods "wound up in the possession of various unauthorized entities and individuals across the country, who attempted to and did re-sell them illegally." First Amended Complaint, Dkt. 29 ¶ 5. Yeti alleges that after its goods were stolen, they were sold through the grey market by a network of middlemen to Mercatalyst, which advertised and sold Yeti's jackets and tote bags to the public. *Id.* ¶ 6; Dkt. 61 at 2. Yeti attaches evidence to its First Amended Complaint showing that

1

Mercatalyst purchased nearly $200,000 of its tote bags from Defendant United National Closeout Stores, Inc. ("UNCS"). Dkt. 29-3 at 7-8 (Exh. 13); Dkt. 29-4 at 31-32 (Exh. 24).

Mercatalyst contends that Yeti's claims are barred by the first-sale doctrine and that it is a bona fide purchaser of the products. First Amended Answer, Dkt. 32 ¶¶ 158, 159. Mercatalyst has filed a third-party complaint against UNCS. Dkt. 50.

In its Motion, Yeti asks the Court to compel Mercatalyst to produce (1) emails in their native format, (2) bank records for transactions for YETI-branded products, (3) financial statements, and (4) identities of and communications with Mercatalyst's customers who bought YETI-branded products. Yeti also seeks an award under Rule 37(a)(5) of its attorneys' fees and expenses for pursuing its motion to compel. Mercatalyst objects that the disputed requests are overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

## II. Legal Standard

Under Rule 26(b)(1), parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Generally, the scope of discovery is broad. *Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 262 (5th Cir. 2011). A discovery request is relevant when it seeks admissible evidence or "is reasonably calculated to lead to the discovery of admissible evidence." *Id.* (quoting *Wiwa v. Royal Dutch Petrol. Co.*, 392 F.3d 812, 820 (5th Cir. 2004)). A trial court enjoys wide discretion in determining the scope and effect of discovery. *Equal Emp. Opportunity Comm'n v. BDO USA, L.L.P.*, 876 F.3d 690, 698 (5th Cir. 2017). "The Court must balance the need for discovery by the requesting party and the relevance of the discovery to the case against the harm, prejudice, or burden to the other party." *Cmedia, LLC v. LifeKey Healthcare, LLC*, 216 F.R.D. 387, 389 (N.D. Tex. 2003) (quoting *Truswal Sys. Corp. v. Hydro-Air Eng'g, Inc.*, 813 F.2d 1207, 1210 (Fed. Cir. 1987)).

After a party has attempted in good faith to obtain discovery without court action, that party may move for an order compelling disclosure or discovery. FED. R. CIV. P. 37(a)(1). Once a party moving to compel discovery establishes that the materials and information it seeks are relevant or will lead to the discovery of admissible evidence, the burden rests on the party resisting discovery to substantiate its objections. *Lozano v. Baylor Univ.*, 339 F.R.D. 447, 450 (W.D. Tex. 2020).

### III.   Analysis

Having considered the parties' briefs and evidence, their arguments at the hearing, and the record as a whole, the Court enters the following Order.

**A.  Emails in Native Format**

Mercatalyst produced its emails, totaling some 200 pages, as one searchable .pdf file. Yeti seeks to compel Mercatalyst to produce emails as "Single Page Tiff Images, Metadata load and Text files that we can load into Relativity" document review software, identifying 31 "standard" metadata fields. Dkt. 44-2 at 4.

Rule 34(b)(2)(E) provides:

> Unless otherwise stipulated or ordered by the court, these procedures apply to producing documents or electronically stored information:
>
> (i)   A party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request;
>
> (ii)  If a request does not specify a form for producing electronically stored information, a party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms; and
>
> (iii) A party need not produce the same electronically stored information in more than one form.

"In keeping with the goal of making the information accessible and useful to the receiving party, the producing party may not substantially cripple the utility of the information when converting it from native format to the form to be used for production." 8B RICHARD L. MARCUS, FEDERAL

3

Practice and Procedure (Wright & Miller) § 2219 (3d ed. April 2023 Update) (citing Fed. R. Civ. P. 34(b) advisory committee's note to 2006 amendment).

The parties admit that they did not discuss the form of production for electronically stored information ("ESI") during their Rule 26(f) conference, as directed by Rule 26(f)(3)(C). In the instructions to its requests for production, Yeti stated that electronic and computerized materials "must be produced in an intelligible format." Dkt. 56-1 at 8.

Mercatalyst contends that, because Yeti did not "specify the form or forms in which electronically stored information is to be produced" under Rule 34(b)(1)(C), it had to produce the emails in either the form "in which they are ordinarily maintained or in a reasonably usable form" under Rule 34(b)(2)(E)(ii). Mercatalyst argues that it should not be required to produce the emails again in a different format because its production is in a "reasonably usable form," and producing the emails in digital format would be merely "a matter of convenience for Yeti." Dkt. 56 at 5. Mercatalyst represented at the hearing that providing a load file for emails in Yeti's requested format would cost approximately $1,000.

The Court agrees that Mercatalyst's 200-page production was "in a reasonably usable form" under Rule 34(b)(2)(E)(ii) and finds that Yeti has not articulated any potential relevance of the metadata it seeks. The facts here are distinguishable from the case on which Yeti relies, *Trmanini v. Ross Stores, Inc.*, No. SA-21-CV-00044-JKP, 2021 WL 5926128 (W.D. Tex. Dec. 15, 2021), a personal injury suit in which an employee asserted negligence against her employer. The Court in *Trmanini* granted a motion to compel production in native format with associated metadata of one training module plaintiff believed to be crucial to her case. The plaintiff specifically sought the ESI "to determine when Plaintiff provided any electronic signature, the length of time it took her to complete her onboarding, and whether the files were subsequently modified or completed at a

4

later time, even after the date of injury." *Id.* at *1. Yeti makes no comparable showing that Mercatalyst's ESI is relevant to any issue in this case.

For these reasons, the Court **DENIES** Yeti's motion to compel Mercatalyst to re-produce in native format the documents it has already produced as a .pdf. *See* Rule 34(b)(2)(E)(iii) ("A party need not produce the same electronically stored information in more than one form.").

The Court reaches a different conclusion as to future document production by Mercatalyst. Yeti has now specified the form in which it requests production under Rule 34(b)(1)(C). Mercatalyst has identified no specific burden of producing future documents in Yeti's requested form beyond an added expense of $1,000, which the Court finds to be proportional to the needs of a case allegedly involving hundreds of thousands of dollars of stolen goods. The Court **GRANTS** Yeti's motion to compel Mercatalyst to produce any additional ESI as "Single Page Tiff Images, Metadata load and Text files."

### B. Financial Documents

Under Section 35(a) of the Lanham Act, 15 U.S.C.A. § 1117(a), a trademark registrant may be entitled to recover a defendant's profits, subject to principles of equity. "Once an award is found to be appropriate, a markholder is only entitled to those profits attributable to the unlawful use of its mark." *Quick Techs., Inc. v. Sage Group PLC*, 313 F.3d 338, 349-50 (5th Cir. 2002) (quoting *Pebble Beach Co. v. Tour 18 Ltd.*, 155 F.3d 526, 554 (5th Cir. 1998)). The purpose of this provision is "to take all the economic incentive out of trademark infringement." *Am. Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 340 (5th Cir. 2008) (quoting *Rolex Watch USA, Inc. v. Meese*, 158 F.3d 816, 824 (5th Cir. 1998)). Section 35(a) provides that the plaintiff is required to prove the defendant's sales only, while the defendant "must prove all elements of cost or deduction claimed." The infringer thus has the burden "to prove any proportion of his total profits which may not have

been due to use of the infringing mark." 5 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION ("MCCARTHY") § 30:65 (5th ed. June 2023 Update).

Yeti argues that, because it seeks the remedy of disgorgement against Mercatalyst, it must obtain Mercatalyst's bank records and financial statements to "calculate those sales, and to test Mercatalyst's claims for costs and deductions." Dkt. 61 at 5.

### 1. Bank Records (Requests for Production Nos. 8 and 47)

Yeti seeks production of bank records relating to the purchase and sale of its goods. Mercatalyst argues that its bank records show only batch payments and bulk deposits and "would not offer any discernable information regarding the purchase or sale of the YETI Products." Dkt. 56 at 6. Mercatalyst represents that it has already provided a spreadsheet with all the information Yeti needs to calculate Mercatalyst's profits from the YETI-branded products, that is, "profit breakdowns by product skew which provide Mercatalyst's revenue for the YETI Products and a detailed break-down of its associated expenses including cost of goods sold, shipping costs, credit card fees, and affiliate fees." *Id.*

### 2. Financial Statements (Request for Production No. 61)

Yeti also requests all of Mercatalyst's financial statements from January 1, 2021 to the present. Yeti asserts that the statements "are relevant and necessary for YETI to prepare [a] damages model by assessing Mercatalyst's revenues and expenses related to the improper use of YETI's trademarks." Dkt. 44 at 5. Mercatalyst contends that because it did not purchase the YETI goods until April 14, 2022, financial statements before that date are irrelevant. Mercatalyst also argues that the Court should not compel production because "[f]inancial statements, by their very nature, do not provide individual product data or even information from which the impact of two products

6

could be derived in the case of an organization that sells thousands of different product skews each year." Dkt. 56 at 7.

### 3. Conclusion as to Financial Documents

The Court finds that Yeti has shown the financial records it requests are relevant to damages, and Mercatalyst has not met its burden to substantiate its objections that such requests are overly broad or unduly burdensome. The Court therefore **GRANTS** the motion to compel as to Requests for Production Nos. 8, 47, and 61.

At the hearing, Mercatalyst offered to produce the underlying documents used to prepare the spreadsheet it has produced to Yeti calculating its profits from the YETI-branded products. The Court also **ORDERS** that Mercatalyst produce those underlying documents.

### C. Customers (Requests for Production Nos. 10, 35, 36, 37, 54, 55, 57, and 58)

Finally, Yeti requests customer information, including: "Documents reflecting the sales of any Unreleased Jackets and Vests, including the name of each purchaser, the dollar amount of each purchase, the specific items purchased, and the date of each purchase," and "all Documents and Communications regarding the identities of purchasers of the Unreleased YETI-branded Jackets and Vests." Requests for Production Nos. 10 and 35, Dkt. 56-1 at 10-11.

Mercatalyst argues that these requests are objectionable because they seek "information that can be gleaned from another, less-intrusive, method of discovery and because the identity of each customer to whom Mercatalyst sold the YETI Products is not inherently relevant to the claims or defenses of the parties." Dkt. 56 at 9. Mercatalyst did not identify, in its briefing or at the hearing, how this information is otherwise available.

Yeti contends that the "identities of and communications with the customers are relevant for several reasons including: (1) these customers purchased stolen (and in some cases unreleased)

YETI products, (2) they could be offering those products for resale, and (3) they could be YETI customers who chose to purchase a YETI-branded product from Mercatalyst rather than YETI." Dkt. 44 at 6. Yeti also argues that customer identities are relevant to assessing consumer confusion and its unfair competition and false advertising claims.

To the extent Yeti argues that it requires the names of Mercatalyst's customers so that it may ask them about confusion, the Court agrees with Professor McCarthy that such discovery would not lead to admissible evidence. *See* 4 MCCARTHY § 23:14 ("Courts have held that defendant need not disclose in discovery the names of defendant's customers in order for plaintiff's attorney to contact and interrogate them as to possible instances of actual confusion in their purchases.") (citing *Annie Oakley Enters., Inc. v. Amazon.com, Inc.*, No. 1:19-cv-1732-JMS-MJD, 2020 WL 6606428, *2-3 (S.D. Ind. Nov. 12, 2020), and *Foxworthy v. Sun Art Designs, Inc.*, No. 96-3372, 1997 WL 196624 (S.D. Fla. Mar. 4, 1997)).

But Yeti has identified other ways in which the requested information may fall within the broad scope of discovery. For example, Yeti argued at the hearing that cross-referencing the names of any customers who bought its stolen goods from Mercatalyst and then made warranty claims may be relevant to damages and its claim that use of its mark on the goods is likely to deceive customers as to their source, origin, sponsorship, and affiliation. Dkt. 29 ¶¶ 113-17. Yeti points out that Mercatalyst has propounded similar discovery requests to it, for example, asking Yeti to produce all documents "in which any person has expressed that Mercatalyst's sale of the Jackets or Totes diluted, blurred, or tarnished the quality of the YETI Marks." Mercatalyst's Request for Production No. 17, Dkt. 44-10 at 8. Similarly, in response to Mercatalyst's interrogatories, Yeti states that it "has received several inquiries from customers who purchased or attempted to purchase Jackets or

8

Totes from [Mercatalyst], including customers concerned about the authenticity of the products." Yeti's Response to Mercatalyst's Interrogatories Nos. 10 and 11, Dkt. 56-2 at 9.

For these reasons, the Court **GRANTS** Yeti's Motion to compel as to Requests for Production Nos. 10, 35, 36, 37, 54, 55, 57, and 58.

### IV.   Conclusion

Plaintiff Yeti Coolers, LLC's Motion to Compel Production from Defendant Mercatalyst, Inc. (Dkt. 44) is **GRANTED IN PART and DENIED IN PART**, as detailed above. The Court **ORDERS** Mercatalyst to:

1. produce all future ESI in native format, as specified by Yeti in Dkt. 44-2 at 4;

2. produce bank records and financial statements responsive to Requests for Production Nos. 8, 47, and 61, as well as the underlying documents Mercatalyst used to prepare the profit spreadsheet it has produced to Yeti; and

3. produce documents responsive to Requests for Production Nos. 10, 35, 36, 37, 54, 55, 57, and 58,

**on or before September 18, 2023**. All other relief not expressly granted herein is **DENIED**.

Fact discovery continues until January 31, 2024, and it was apparent at the hearing that the parties are at an early stage in determining the most efficient means of identifying specific documentary evidence most relevant to the claims at issue. As discovery continues, the Court urges counsel to remain mindful of their obligation to attempt to resolve any such issues amicably, *Collins v. Easynews, Inc.*, No. A-06-CA-451-LY, 2007 WL 9701619, at *2 (W.D. Tex. May 17, 2007), and that motion practice must be a "recourse of last resort" in resolving a discovery dispute, *Rainbow Energy Mktg. Corp. v. DC Transco, LLC*, No. 1:21-cv-313-RP, 2022 WL 2820670, at *1 (W.D. Tex. July 18, 2022) (citation omitted); *see also, e.g.*, FED. R. CIV. P. 1 (stating that rules should be employed by court and parties "to secure the just, speedy, and inexpensive determination of every action and proceeding").

It is **ORDERED** that the Clerk remove this case from this Magistrate Judge's docket and **RETURN** it to the docket of the Honorable David A. Ezra.

**SIGNED** on August 17, 2023.

_____
SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE