UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| YETI Coolers, LLC,<br>    *Plaintiff*, | §<br>§<br>§ | No. 1:22-CV-01337-DAE |
| vs. | §<br>§ | |
| Mercatalyst, Inc., TerraCycle US, LLC, Aksha Plastic, Inc., Devang H. Patel, Oscar Guel, Robert N. Rezak, Global Xcessories, Inc., and Daniel Gavrielov, | §<br>§<br>§<br>§<br>§<br>§ | |
| *Defendants*. | | |

ORDER DECLINING TO ADOPT U.S. MAGISTRATE JUDGE HIGHTOWER'S
<u>REPORT AND RECOMMENDATION</u>

Before the Court is U.S. Magistrate Judge Hightower's Report and Recommendation ("Report"), issued on August 16, 2023, concerning Plaintiff YETI's Motion for Default Judgment with Respect to Defendant Oscar Guel. (Dkt. # 74.)

The Court finds this matter suitable for disposition without a hearing. After careful consideration, the Court—for the reasons that follow— **DECLINES to Adopt** Judge Hightower's Report.

1

BACKGROUND

In 2021, YETI considered adding outerwear to its product line. As part of that process, YETI obtained thousands of YETI branded down feather vests and jackets. (Dkt. # 29 at ¶ 2.) But after further testing and analysis, YETI decided not to take the jackets to market. (Id.) As a result, YETI contracted with TerraCycle US, LLC ("TerraCycle") for the jackets to be destroyed and recycled. (Id.) At the same time, YETI needed to recycle and destroy thousands of YETI branded backpacks and tote bags that were at the end of their sales lifecycles and ready to be replaced with new styles. (Id. at ¶ 3.)

On March 16, 2021, YETI entered into a Materials Recycling Program Agreement with TerraCycle for the sustainable destruction and recycling of the jackets, backpacks, and totebags. (Id. at ¶ 44.) In entering into the Agreement, YETI paid TerraCycle and through it, Akshar and Patel, to take control of the YETI branded goods for the sole and specific purpose of destroying them. (Id.)

Unbeknownst to YETI, thousands of YETI branded jackets, backpacks, and tote bags wound up in the possession of various unauthorized entities and individuals across the country, who resold them illegally. (Id. at ¶ 5.)

In this Motion, YETI has filed a Motion for Default Judgment with Respect to Defendant Oscar Guel. As alleged in YETI's Complaint, Guel has engaged in multiple illicit transactions with Akshar and Patel in the past. In this case,

2

Guel was allegedly the first person to negotiate with Akshar and Patel to facilitate the illicit transactions. Guel allegedly facilitated transactions for the sale stolen YETI goods involving multiple states. The Court reviews Judge Hightower's decision denying YETI's default judgment for lack of personal jurisdiction.

## LEGAL STANDARD

The Court must conduct a de novo review of any of the Magistrate Judge's conclusions to which a party has specifically objected. See 28 U.S.C. § 636(b)(1)(C) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."). The objections must specifically identify those findings or recommendations that the party wishes to have the district court consider. Thomas v. Arn, 474 U.S. 140, 151 (1985). A district court need not consider "[f]rivolous, conclusive, or general objections." Battle v. U.S. Parole Comm'n, 834 F.2d 419, 421 (5th Cir. 1987). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

Findings to which no specific objections are made do not require de novo review; the Court need only determine whether the Recommendation is clearly erroneous or contrary to law. United States v. Wilson, 864 F.2d 1219, 1221 (5th Cir. 1989).

Under Rule 55 of the Federal Rules of Civil Procedure, a default occurs when a defendant fails to plead or otherwise respond to a complaint within the time required. New York Life Ins. Co. v. Brown, 84 F.3d 137, 141 (5th Cir. 1996). After the defendant's default has been entered by the clerk of court, the plaintiff may apply for a judgment based on the default. Id. Even when the defendant technically is in default, however, a party is not entitled to a default judgment as a matter of right. Escalante v. Lidge, 34 F.4th 486, 492 (5th Cir. 2022). There must be a sufficient basis in the pleadings for the judgment entered. Wooten v. McDonald Transit Assocs., Inc., 788 F.3d 490, 498 (5th Cir. 2015). Entry of default judgment is within the court's discretion. See Stelly v. Duriso, 982 F.3d 403, 406 (5th Cir. 2020); Lindsey v. Prive Corp., 161 F.3d 886, 893 (5th Cir. 1998).

## DISCUSSION

Judge Hightower recommended this Court deny Plaintiff's Motion for Default Judgment with respect to Defendant Guel because she found this Court lacks personal jurisdiction over Guel.

When a party seeks entry of default judgment under Rule 55, "the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties." Sys. Pipe & Supply, Inc. v. M/V Viktor Kurnatovskiy, 242 F.3d 322, 324 (5th Cir. 2001) (citation omitted).

In summary, Judge Hightower found that Guel lacks the minimum contacts necessary in the forum to satisfy due process.

Guel is a resident of California. As the Complaint alleges on information and belief, Guel

> Purposefully availed himself of the benefits of doing business in Texas and has established minimum contacts with the State of Texas for purposes of personal jurisdiction. In particular, Guel caused and facilitated the illegal transfer of the stolen YETI®-branded jackets and tote bags through various middle-men to [Defendant Mercatalyst, Inc.] in Texas, whereupon the stolen goods were sold to consumers, including in the state of Texas, thereby causing harm to YETI in the State of Texas and in this District.

Based on the facts, Judge Hightower found that YETI showed no contact between Guel, a California resident, and Texas. Judge Hightower noted that under Walden v. Fiore, it is the defendant's conduct that must form the necessary connection with the forum state. "A defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." 571 U.S. 277, 286 (2014).

Judge Hightower considered specific jurisdiction under the effects test from Calder v. Jones, 465 U.S. 783 (1984), and concluded YETI failed to allege that Guel intentionally directed his activities to Texas. As Judge Hightower highlighted, mere injury to a forum resident is not a sufficient connection to the forum. Sangha v. Navig8 ShipManagement Private Ltd., 882 F.3d 96, 103 (5th Cir.

2018) (citing Walden, 571 U.S. at 290 ("'Regardless of where a plaintiff lives or works, an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State.'"))

However, Judge Hightower did not conduct an analysis under the Supreme Court's "stream of commerce metaphor." With respect to the Lanham Act and unfair competition claims, the Court must ask in what forum did the trademark infringement occur? The answer requires an analysis through a stream of commerce metaphor. See Luv N' care, Ltd. v. Insta-Mix, Inc 438 F.3d 465, 470 (5th Cir. 2006) (applying the stream of commerce to claims under the Lanham Act).

Under the Fifth Circuit's precedent in Ainsworth, this Court has jurisdiction over Guel for unauthorized sales in Texas.

The Fifth Circuit has found minimum contacts exist so long as the court determines "that the defendant delivered the product into the stream of commerce with the expectation that it would be purchased by or used by consumers in the forum state." Ainsworth v. Moffett Eng'g, Ltd., 716 F.3d 174, 177 (5th Cir. 2013) (quoting Bearry v. Beech Aircraft Corp., 818 F.2d 370, 374 (5th Cir.1987)). In other words, "mere foreseeability or awareness [is] a constitutionally sufficient basis for personal jurisdiction if the defendant's product made its way into the forum state while still in the stream of commerce." Luv N' care, Ltd. v. Insta–Mix, Inc., 438 F.3d 465, 470

(5th Cir. 2006)).  But, "[t]he defendant's contacts [with the forum state] must be more than 'random, fortuitous, or attenuated, or [the result] of the unilateral activity of another party or third person.'"  ITL Int'l, Inc. v. Constenla, S.A., 669 F.3d 493, 498 (5th Cir. 2012).

In Nestle USA, Inc. v. Ultra Distribuciones Mundiales S.A. de C.V., the undersigned explained that "the fact that Ultra Mundiales never sold products in Texas is not determinative."  516 F. Supp. 3d at 644 (W.D. Tex. 2021) (Ezra, J.) (construing Ainsworth, 716 F.3d at 177, and cases cited therein).  "[T]he 'mere foreseeability or awareness' standard is satisfied where the foreign supplier could reasonably expect that sales would be made in this forum by a third party."  Id. (citing Ainsworth, 716 F.3d at 179).

In Nestle, the undersigned found jurisdiction over defendant in a stream of commerce case because the entities involved should have known their products were likely to be sold in Texas.  Id.  Defendant Ultra Mundiales shared leadership with its Texas subsidiary Ultra International and transferred several products to it in Texas.  Id. at 643.  Plaintiffs presented evidence of Ultra Mundiales' knowledge that its products would end up in Texas.  Id. at 645.

In Nestle, this Court distinguished the facts from Zoch v. Magna Seating Zoch v. Magna Seating (Germany) GmbH, 810 F. App'x 285 (5th Cir. 2020).  In Zoch, plaintiff conceded he had no evidence that defendant was aware that any of

7

its manufactured products would end up in Texas. Nestle, 516 F. Supp. 3d 633 at 645.

Importantly, the undersigned noted that Zoch is an unpublished opinion not binding on this Court.[1]  The Fifth Circuit in Zoch warned that it makes "no broad pronouncements with respect to the stream-of-commerce theory" and expressly limited the case to the facts at hand.  Since Zoch, many district courts have decided not to adopt its ruling because it did not set a precedent.  See Metro Equip. & Rental Co. v. Tsurumi Mfg. Co., No. PE:21-CV-00030-DC-DF, 2022 WL 1491099, at *6 (W.D. Tex. May 11, 2022) (discussing Zoch and its progeny).

In fact, many district courts have continued to rely on Ainsworth as Fifth Circuit precedent.  Id. at *5 ("the undersigned chooses to follow the most contemporaneous and more comprehensive version of the stream of commerce doctrine as promulgated by the Fifth Circuit, and will not endorse Justice O'Connor's 'something more' approach at this time.")  Speaking for four Justices in a plurality opinion, Justice O'Connor wrote to confer jurisdiction in a stream of commerce analysis there must be "an action of the defendant purposefully directed toward the forum." Asahi Metal Indus. Co. v. Superior Ct. of California, Solano Cnty., 480 U.S. 102, 112 (1987). But four of the Justices considered 'additional conduct' unneeded.

---

[1] Unpublished opinions issued on or after January 1, 1996, are not precedent, except under the doctrine of res judicata, collateral estoppel or law of the case (or similarly to show double jeopardy, notice, sanctionable conduct, entitlement to attorney's fees, or the like)." 5th Cir. R. 47.5.

Asahi, 480 U.S. at 104 (1987) (Brennan, J., concurring in part).

> "The stream of commerce refers not to unpredictable currents or eddies, but to the regular and anticipated flow of products from manufacture to distribution to retail sale.... A defendant who has placed goods in the stream of commerce benefits economically from the retail sale of the final product in the forum State, and indirectly benefits from the State's laws that regulate and facilitate commercial activity." Id. at 1034-35.

The Fifth Circuit has yet to adopt Zoch nor Justice O'Connor's opinion in Asahi. For instance, in Luv N' care, Ltd. v. Insta-Mix, Inc., a magistrate judge issued a recommendation that the suit be dismissed because "[s]imply placing [a] product in the stream of commerce is not sufficient to create personal jurisdiction even if it were foreseeable that the product might end up in Louisiana." The district court adopted the recommendation. 438 F.3d 465, 469. The Fifth Circuit reversed, saying the district court erred in holding that placing a product into the stream of commerce, at least where the defendant knows the product will ultimately reach the forum state, does not rise to the level of "purposeful availment." Id. at 470. The Fifth Circuit declined to follow the suggestion of the plurality in Asahi that some additional action on the part of the defendant, beyond foreseeability, is necessary to "convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State." Luv N' care, 438 F.3d at 470 (5th Cir. 2006).

In accordance with the Fifth Circuit, the Court finds Guel amendable to suit in Texas and its contacts withstand constitutional scrutiny.

YETI claims the infringing sales took place in Texas via WOOT!,

9

physically based in Texas, and defendant Mercatalyst, who sells online and through brick-and-mortar stores in Texas.

The Complaint specifically calls out Guel as one of the potential orchestrators of the scheme and the first person to negotiate with Akshar and Patel to facilitate the alleged illicit transactions. As stated in the Complaint "Guel had previously engaged in similar illicit transactions with Akshar and Patel." Guel then involved Enrique Loza ("Loza") in Utah. Loza met with Patel in early December 2021 at Akshar's facility in Illinois to coordinate one or more joint transactions for the sale of the stolen YETI goods. Guel and Loza allegedly acquired thousands of the YETI goods from Akshar and Patel and then sold them to Defendants Rezak and Global Xcessories in New Jersey.

This Court already found jurisdiction over Akshar for allegedly stealing YETI branded goods and accessing a nationwide market. It only makes sense that one of the potential facilitators who conspired with Akshar to access the nation-wide market is also bound by this Court. Guel should not be considered a low-brow middleman. Plaintiffs plead that Guel was the first to negotiate with Akshar to put the alleged stolen goods onto the market. Ultimately, it was Guel who allowed for the alleged stolen goods to be sold on Woot!, an Amazon company, headquartered in Carrollton, Texas.

A later shipment followed a similar chain of events. Goods flowed from

Illinois to Utah and then a retailer in New Jersey. This batch was sold and then re-sold to Mercatalyst in Texas. Mercatalyst marketed and sold the stolen YETI branded goods from Texas to consumers in Texas and throughout the U.S. (Id. at ¶ 60, 70.) As Plaintiffs plead, none of this would have occurred had Guel not negotiate with Akshar to send the goods into a nation-wide market.

In this case, Guel would have expected the YETI products to enter Texas and infringe YETI's trademark in Texas. Guel did not limit the reach of where or when the stolen YETI products would be sold. Guel negotiated shipments and orchestrated sales with Akshar in Utah and New Jersey. Given this expansive multi-state operation, it is probable and foreseeable that the goods would have been sold by retailers in Texas. Oswalt v. Scripto, Inc., 616 F.2d 191, 199–200 (5th Cir. 1980) (finding jurisdiction where defendant "attempted in [no] way to limit the states in which the [products] could be sold" but instead "had every reason to believe its product would be sold to a nation-wide market, that is, in any or all states"); Largan Precision Co. v. Ability Opto-Elec. Tech. Co., 2020 WL 569815, at *7 (E.D. Tex. Feb. 5, 2020) (court has "no problem concluding that [defendant] could have expected" that products would be sold in Texas through the stream of commerce, because "the State of Texas has the second largest population of any state and three of the ten most populated cities.").

In Seasons USA, Inc., the court found jurisdiction in Texas over a party

11

who placed its products on Amazon and accessed a national market.  No. 2:22-CV-00409-JRG-RSP, 2023 WL 5344342, at *2 (E.D. Tex. June 9, 2023), report and recommendation adopted, No. 2:22-CV-00409-JRG-RSP, 2023 WL 5336842 (E.D. Tex. Aug. 17, 2023). In this case, Guel has accessed multiple markets by allegedly negotiating shipments of jackets and bags with individuals residing in multiple states.  Guel ultimately benefited from the Texas marketplace as two major retailers resulted in selling the stolen goods.

A bulk of infringing sales to consumers took place in and through Texas via WOOT! and Mercatalyst.  Both entities have direct ties to Texas.  (Dkt. #29 at ¶¶ 65-68 78-97.)  The infringing sales in Texas arise out of Guel placing the goods into the stream of commerce.  Because the infringing sales in Texas were foreseeable, the Court may exercise personal jurisdiction over Guel under the stream of commerce doctrine.

However, the Court will adopt Judge Hightower's analysis at it pertains to the claim of conversion. Just because the Court has jurisdiction over the Guel under the Lanham Act, does not mean that is also has jurisdiction over the tort of conversion. Each claim must be analyzed for personal jurisdiction individually. See Seiferth v. Helicopteros Atuneros, Inc., 472 F.3d 266, 275 (5th Cir. 2006) ("[I]f a plaintiff's claims relate to different forum contacts of the defendant, specific jurisdiction must be established for each claim.") (citing 5B

CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 3D § 1351, at 299 n.30 (2004) ("There is no such thing as supplemental specific personal jurisdiction; if separate claims are pled, specific personal jurisdiction must independently exist for each claim and the existence of personal jurisdiction for one claim will not provide the basis for another claim.")

When it comes to conversion, none of Guel's contacts can be attributed to Texas. There is nothing about Texas as a forum that relates to the tort of conversion. The tort of conversion occurs where Guel exercised dominion and control over the property. Jones v. Artists Rights Enf't Corp., 789 F. App'x 423, 427 (5th Cir. 2019) This did not occur in Texas. Therefore, the Court lacks jurisdiction as to the claim of conversion.

If a plaintiff establishes minimum contacts between the defendant and the forum state, the burden of proof shifts to the defendant to show that the assertion of jurisdiction is unfair and unreasonable." Dontos v. Vendomation NZ Ltd., 582 F. App'x 338, 343 (5th Cir. 2014) (citing Cent. Freight Lines Inc. v. APA Transp. Corp., 322 F.3d 376, 384 (5th Cir. 2003)). "To show that an exercise of jurisdiction is unreasonable once minimum contacts are established, the defendant must make a 'compelling case' against it." Wien Air Alaska, Inc. v. Brandt, 195 F.3d 208, 215 (5th Cir. 1999) (citing Burger King, 471 U.S. at 477). To determine whether jurisdiction is unfair and unreasonable, the Court may consider "(1) the burden on

13

the nonresident defendant, (2) the forum state's interests, (3) the plaintiff's interest in securing relief, (4) the interest of the interstate judicial system in the efficient administration of justice, and (5) the shared interest of the several states in furthering fundamental social policies." McFadin v. Gerber, 587 F.3d 753, 759–60 (5th Cir. 2009).

In favor of finding the exercise of jurisdiction reasonable, Texas has legitimate interests in adjudicating a dispute that involves the sale of goods in Texas and to Texas consumers. Ruston Gas Turbines, Inc. v. Donaldson Co., 9 F.3d 415, 421 (5th Cir. 1993). Additionally, YETI has a compelling interest in obtaining relief in the forum where its goodwill and reputation have been damaged as a result of Defendants' allegedly infringing sales. Viahart, LLC v. Does 1-54, No. 6:18-CV-604-RWS-KNM, 2022 WL 4138590, at *9 (E.D. Tex. July 18, 2022), report and recommendation adopted, No. 6:18-CV-00604-RWS, 2022 WL 4137278 (E.D. Tex. Sept. 12, 2022).

Moreover, it is not unreasonable to ask Guel to litigate in Texas. He profited from items being sold in Texas and allegedly continues to profit from the state's market. Luv N' care, 438 F.3d at 474.

CONCLUSION

In light of this Courts' decision, the Court finds it has proper jurisdiction over the following claims: (1) trademark infringement in violation of 15 U.S.C. §

1114; (ii) unfair competition, false designation of origin of his goods and services, and/or false advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a); (iii) trademark dilution under 15 U.S.C. § 1125(c); (iv) unfair competition pursuant to common law. However, the Court does not have jurisdiction over the conversion claim. The Court will REFER to Magistrate Hightower whether Plaintiff YETI can now recover a default judgment against Guel for the remaining claims.

**IT IS SO ORDERED.**

DATED: Austin, Texas, December 1, 2023

_____
David Alan Ezra
Senior United States District Judge