# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| **Yeti Coolers, LLC,** *Plaintiff* § § § | |
| v. § § | Case No. 1:22-CV-01337-DAE |
| **TerraCycle US, LLC, Akshar Plastic, Inc., Devang H. Patel, Oscar Guel, Robert N. Rezak, and Global Xcessories, Inc.,** *Defendants* § § § § § § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

**TO: THE HONORABLE DAVID A. EZRA
UNITED STATES DISTRICT JUDGE**

Now before the Court is Plaintiff Yeti Coolers, LLC's Motion for Default Judgment with Respect to Defendant Oscar Guel, filed June 29, 2023 (Dkt. 45). By Text Order entered July 20, 2023, the District Court referred the motion to this Magistrate Judge for Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas.

### I. Background

Yeti owns several registrations on the Principal Register of the United States Patent and Trademark Office for the mark YETI for various retail services, clothing, and bags, including jackets, backpacks, and tote bags. Exh. 1 to First Amended Complaint, Dkt. 29-1 at 1-7. Yeti sues Defendant Oscar Guel for trademark infringement and dilution and false designation of origin under federal law, and for unfair competition and conversion under state common law.

1

Yeti alleges that it contracted with another defendant, TerraCycle US, LLC, to destroy and recycle thousands of YETI-branded jackets it never released and discontinued styles of backpacks and tote bags, but the YETI-branded goods "wound up in the possession of various unauthorized entities and individuals across the country, who attempted to and did re-sell them illegally." Dkt. 29 ¶ 5. Yeti alleges that after the goods were stolen, they were sold through the grey market by a network of third-party middlemen, including Guel, for sale to consumers. *Id.* ¶ 60; Dkt. 45 at 8. Yeti now seeks a default judgment against Guel, a permanent injunction, return of all YETI goods in his possession, and disgorgement of $260,000 in revenue. Dkt. 45 at 25.

Yeti served its First Amended Complaint on Guel on May 4, 2023. Dkt. 35. Guel has made no appearance and failed to properly plead, respond, or otherwise defend. On June 9, 2023, the clerk of court granted Yeti's motion for an entry of default. Dkt. 38. Yeti then filed this motion for default judgment as to Guel. Guel has not answered the First Amended Complaint or otherwise defended Yeti's claims.

## II.   Legal Standard

Under Rule 55 of the Federal Rules of Civil Procedure, a default occurs when a defendant fails to plead or otherwise respond to a complaint within the time required. *New York Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996). After the defendant's default has been entered by the clerk of court, the plaintiff may apply for a judgment based on the default. *Id*. Even when the defendant technically is in default, however, a party is not entitled to a default judgment as a matter of right. *Escalante v. Lidge*, 34 F.4th 486, 492 (5th Cir. 2022). There must be a sufficient basis in the pleadings for the judgment entered. *Wooten v. McDonald Transit Assocs.*, 788 F.3d 490, 498 (5th Cir. 2015). Entry of default judgment is within the court's discretion. *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998).

### III.     Analysis

In considering any motion for default judgment, a court must examine jurisdiction, liability, and damages. *Rabin v. McClain*, 881 F. Supp. 2d 758, 763 (W.D. Tex. 2012).

### A. Jurisdiction

In a Report and Recommendation issued August 16, 2023, this Magistrate Judge found that Yeti had not established the Court's personal jurisdiction over Guel and recommended that the District Court deny Yeti's motion for default judgment for lack of jurisdiction. Dkt. 74 at 5-6. After this Magistrate Judge issued the Report and Recommendation, on November 27, 2023, the District Court issued an order denying a motion to dismiss for lack of personal jurisdiction filed by Defendants Akshar Plastic, Inc. and Devang H. Patel, finding that the Court may exercise personal jurisdiction over Defendants under the stream of commerce doctrine. Dkt. 83 at 24.

In an Order issued December 1, 2023, the District Court declined to adopt this Magistrate Judge's Report as to default judgment against Guel. Dkt. 92. The Court concluded: "The infringing sales in Texas arise out of Guel placing the goods into the stream of commerce. Because the infringing sales in Texas were foreseeable, the Court may exercise personal jurisdiction over Guel under the stream of commerce doctrine." *Id.* at 12. Thus, while the District Court found that it does not have jurisdiction over Yeti's conversion claim, it concluded that it did have proper jurisdiction over these claims: (1) trademark infringement in violation of 15 U.S.C. § 1114; (ii) unfair competition, false designation of origin of Guel's goods and services, and/or false advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a); (iii) trademark dilution under 15 U.S.C. § 1125(c); and (iv) unfair competition pursuant to common law. *Id.* at 14-15. The District Court then referred to this Magistrate Judge whether Yeti can now recover a default judgment against Guel for the remaining claims. *Id.* at 15.

Because jurisdiction is established as to these four claims, the Court considers liability and damages.

**B. Liability**

Courts have developed a three-part test to determine whether to enter a default judgment. First, the court considers whether entry of default judgment is procedurally warranted. Second, the court assesses the substantive merits of the plaintiff's claims to determine whether there is a sufficient basis in the pleadings for judgment. Finally, the court determines what relief, if any, the plaintiff should receive. *United States v. 1998 Freightliner Vin #: 1FUYCZYB3WP886986*, 548 F. Supp. 2d 381, 384 (W.D. Tex. 2008).

**1. Procedural Requirements**

In determining whether a default judgment is procedurally warranted, courts in the Fifth Circuit consider these factors:

> (1) whether material issues of fact are at issue;
> (2) whether there has been substantial prejudice;
> (3) whether the grounds for default are clearly established;
> (4) whether the default was caused by a good faith mistake or excusable neglect;
> (5) the harshness of a default judgment; and
> (6) whether the court would think itself obliged to set aside the default on the defendant's motion.

*Lindsey*, 161 F.3d at 893.

On balance, these factors favor a finding that default judgment is procedurally warranted. First, because Guel has not filed an answer or any responsive pleadings, there are no material facts in dispute. *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) (stating that "[t]he defendant, by his default, admits the plaintiff's well-pleaded allegations of fact"). Second, "Defendant's failure to respond threatens to bring the adversary process to a halt,

4

effectively prejudicing Plaintiff's interests." *Ins. Co. of the W. v. H & G Contractors, Inc.*, No. C-10-390, 2011 WL 4738197, at *3 (S.D. Tex. Oct. 5, 2011). Third, the grounds for default are "clearly established," as Guel was properly served but has not responded. Fourth, because Guel has failed to appear, the Court can find no good-faith mistake or excusable neglect on his part. A default judgment for disgorgement of the gross revenue from the sale of stolen goods is not "harsh" in a trademark case, and the Court is unaware of any facts giving rise to good cause to set aside default judgment in this case if challenged by Guel. Accordingly, the Court concludes that default judgment is procedurally warranted.

2.  **Sufficiency of Plaintiff's Complaint**

Next, the Court must assess the substantive merits of Yeti's claim and determine whether there is a sufficient basis in the pleadings for the judgment requested. Default judgment is proper only if the well-pleaded factual allegations in Yeti's Amended Complaint establish a valid cause of action. Courts are to assume that by its default, the defendant admits all well-pleaded facts in the plaintiff's complaint. *Nishimatsu*, 515 F.2d at 1206; *see also United States v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987) ("After a default judgment, the plaintiff's well-pleaded factual allegations are taken as true, except regarding damages."). But the defendant "is not held to admit facts that are not well-pleaded or to admit conclusions of law. In short . . . a default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover." *Nishimatsu*, 515 F.2d at 1206.

In determining whether factual allegations are sufficient to support a default judgment, the Fifth Circuit employs the same analysis used to determine sufficiency under Federal Rule of Civil Procedure 8. *Wooten*, 788 F.3d at 498. A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The factual

allegations in the complaint need only "be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Wooten*, 788 F.3d at 498 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). While detailed factual allegations are not required, the pleading must present "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

The Court considers whether there is sufficient basis in Yeti's pleadings for judgment as to (1) trademark infringement (15 U.S.C. § 1114); (2) unfair competition, false advertising, false association, and/or false designation of origin (15 U.S.C. § 1125(a)(1)(A)); (3) trademark dilution (15 U.S.C. § 1125(c)); and (4) unfair competition.

    **a. Trademark Infringement under Section 32 of the Lanham Act, 15 U.S.C. § 1114, and Unfair Competition under Texas Common Law**

Claims for unfair competition under Texas common law are analyzed under the same standard as trademark infringement under the Lanham Act, and courts often analyze these claims together. *See Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 235 n.7 (5th Cir. 2010) ("A trademark infringement and unfair competition action under Texas common law presents essentially 'no difference in issues than those under federal trademark infringement actions.'") (quoting *Horseshoe Bay Resort Sales Co. v. Lake Lyndon B. Johnson Imp. Corp.*, 53 S.W.3d 799, 806 n.3 (Tex. App.—Austin 2001, pet. denied)); *Mott's LLP v. Comercializadora Eloro, S.A.*, 507 F. Supp. 3d 780, 792 (W.D. Tex. 2020) (same). To prevail on these claims, Yeti must show that (1) it possesses a legally protectable trademark, and (2) Guel's use of the mark creates a likelihood of confusion as to source, affiliation, or sponsorship. *Streamline Prodn. Sys. v. Streamline Mfg.*, 851 F.3d 440, 450 (5th Cir. 2017).

Yeti alleges that it owns legally protectable rights in the mark YETI for bags and apparel. Dkt. 29 ¶ 33-40. Yeti also alleges that Guel's unauthorized use of the YETI mark is likely to cause confusion or mistake, to deceive, or to cause those encountering the unauthorized YETI-branded goods to believe that the goods originate from or are in some manner endorsed, sponsored, or approved by Yeti. *Id.* ¶¶ 110, 137. These allegations state claims for trademark infringement under 15 U.S.C. § 1114 and unfair competition under Texas common law.

### b. False Designation of Origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A)

For its second claim, Yeti alleges:

> Defendants' unauthorized use of the mark to sell the YETI®-Branded Goods constitutes a false designation of origin and a false or misleading representation of fact, which is likely to cause confusion and/or mistake and is likely to deceive customers and potential customers as to the source, origin, sponsorship, and affiliation of the goods sold by Defendants.

Dkt. 29 ¶ 115. A plaintiff must prove five elements to establish false designation of origin under Section 43(a): (1) the defendant made a false or misleading statement of fact about its product or service; (2) the statement either deceived or had the capacity to deceive a substantial segment of potential customers; (3) the deception was material, in that it was likely to influence consumers' purchasing decision; (4) the product or service is in interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the statement at issue. *Nestle USA, Inc. v. Ultra Distribruciones Mundiales S.A. de C.V.*, 516 F. Supp. 3d 633, 650-51 (W.D. Tex. 2021).

The Court finds that Yeti has alleged each of these elements in its Amended Complaint. Dkt. 29 ¶¶ 33, 36, 115, 117. It has sufficiently alleged its claim under 15 U.S.C. § 1125(a)(1)(A).

### c. Trademark Dilution under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c)

A trademark dilution claim requires four elements: (1) the plaintiff owns a famous and distinctive mark; (2) the defendant has begun using the senior mark after it became famous;

7

(3) similarity between the senior mark and junior mark causes association between the two; and (4) the association is likely to impair the distinctiveness or harm the reputation of the plaintiff's mark. *Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527, 548 (5th Cir. 2015). Yeti satisfies the first, third, and fourth elements by alleging that the YETI mark is distinctive and famous, Dkt. 29 ¶ 119, and that "Defendants' actions have and are likely to continue to dilute, blur and tarnish the distinctive quality of the YETI Marks, and lessen the capacity of the YETI Marks to identify and distinguish the company's products." *Id.* at ¶ 122. But Yeti does not allege that Guel began using the YETI mark after it became famous. Because it has not satisfied the second element, Yeti has not stated a sufficient claim for trademark dilution under 15 U.S.C. § 1125(c).

In sum, this Magistrate Judge finds that there is basis in the pleadings for a judgment on Yeti's claims against Guel for trademark infringement and unfair competition under the Lanham Act and for unfair competition under Texas law, but not for trademark dilution under the Lanham Act.

## C. Relief

Having found that the motion for default judgment should be granted in part and judgment entered in favor of Yeti on its trademark infringement and unfair competition claims, the Court must determine the appropriate relief. "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." FED. R. CIV. P. 54(c). Yeti seeks a permanent injunction and an award of $260,000.

### 1. Permanent Injunction

Yeti asks the Court to permanently enjoin Guel, his distributors, retailers, agents, employees, representatives, and all persons acting in concert with him, from:

    i.    using or attempting to use any of the YETI intellectual property, including but not limited to the YETI Marks;

    ii.    engaging in any false or misleading advertising with respect to YETI®-Branded Goods, which relief includes but is not limited to prohibiting the offer for sale or sale of any YETI®-Branded Goods;

    iii.    retaining, acquiring, or taking steps to acquire any YETI®-Branded Goods;

    iv.    advertising, selling, or taking any steps to sell any YETI®-Branded Goods;

    v.    engaging in any activity constituting unfair competition with YETI; and

    vi.    inducing, assisting, or abetting any other person or entity in engaging in or performing any of the business activities described in the paragraphs above.

Dkt. 45 at 25.

Section 34(a) of the Lanham Act, 15 U.S.C. § 1116(a), permits a court to "grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable," to prevent trademark infringement or false designation of origin. A plaintiff seeking such an injunction "shall be entitled to a rebuttable presumption of irreparable harm" on a finding of a violation. *Id.* A plaintiff seeking a permanent injunction generally must satisfy a four-factor test: (1) the plaintiff has suffered an irreparable injury; (2) remedies available at law, such as monetary damages, are inadequate compensation; (3) considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) a permanent injunction would not disserve the public interest. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). The requirements of irreparable injury and no adequate remedy at law often are indistinguishable. *Lewis v. S. S. Baune*, 534 F.2d 1115, 1124 (5th Cir. 1976).

The Court finds that all four factors favor a permanent injunction. First, Yeti is entitled to a presumption that it has suffered an irreparable injury because it has shown violations of the Lanham Act. 15 U.S.C. § 1116(a). Second, monetary damages cannot remedy the damage to Yeti by Guel's conduct in causing consumer confusion, "debasing the YETI brand and damaging the reputation and goodwill associated with its long-standing and famous marks." Dkt. 29 ¶ 102. Third, the balance of equities weighs heavily in Yeti's favor, as Guel trafficked in goods stolen

from Yeti. Finally, the public interest would be served by granting a permanent injunction, protecting consumers from purchasing stolen and infringing goods. *See EKF Diagnostics Inc. v. Intermountain Biomedical Servs. Inc.*, No. 5:18-CV-195-DAE, 2018 WL 3603070, at *14 (W.D. Tex. June 18, 2018) (stating that "[t]he public interest is always served by requiring compliance with Congressional statutes such as the Lanham Act and by enjoining the use of infringing marks") (citation omitted).

### 2. Defendant's Profits

As a general rule, courts may enter a default judgment awarding damages without a hearing only if the amount of damages is a liquidated sum, an amount capable of mathematical calculation, or an amount demonstrated by detailed affidavits. *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993); *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979). It is a matter within the court's discretion whether to hold a hearing before awarding damages in a default judgment. *See* FED. R. CIV. P. 55(b)(2) (stating that the court "may conduct hearings" when it needs to conduct an accounting or determine the amount of damages); *James*, 6 F.3d at 310 (district court has wide latitude in deciding whether to require evidentiary hearing before entering default judgment). Yeti does not request a hearing.

Under Section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a), a trademark registrant may be entitled to recover profits from a defendant who has violated any of its rights, subject to principles of equity. "Once an award is found to be appropriate, a markholder is only entitled to those profits attributable to the unlawful use of its mark." *Quick Techs., Inc. v. Sage Grp. PLC*, 313 F.3d 338, 349-50 (5th Cir. 2002) (quoting *Pebble Beach Co. v. Tour 18 Ltd.*, 155 F.3d 526, 554 (5th Cir. 1998)). Section 35(a) provides that the plaintiff is required to prove the defendant's sales only, while the defendant "must prove all elements of cost or deduction claimed."

Yeti alleges and offers evidence that Guel received $260,000 in gross revenues for selling stolen YETI-branded goods, comprising 2,500 backpacks, 2,200 jackets, and 3,580 tote bags. Declaration of Enrique Loza, Dkt. 45-1 ¶¶ 5-8. This amount is shown by a detailed declaration. *Id.*; *United Artists*, 605 F.2d at 857. Yeti estimates that Guel paid $135,799.20 for the stolen goods, yielding a profit of $124,200.80. Dkt. 45-2. Yeti alleges that the original suggested retail value of the stolen backpacks and tote bags alone exceeded $1 million. Dkt. 29 ¶ 64. Yeti asks for disgorgement of Guel's gross revenue or, in the alternative, an award of his estimated profits.

There are two considerations in assessing whether disgorgement is appropriate. *Retractable Techs., Inc. v. Becton Dickinson & Co.*, 919 F.3d 869, 875-76 (5th Cir. 2019).

> The first is whether disgorgement is equitable under the six factors set forth in *Pebble Beach Co. v. Tour 18 I Ltd.*:
>
> > (1) whether the defendant had the intent to confuse or deceive, (2) whether sales have been diverted, (3) the adequacy of other remedies, (4) any unreasonable delay by the plaintiff in asserting his rights, (5) the public interest in making the misconduct unprofitable, and (6) whether it is a case of palming off.
>
> The *Pebble Beach* factors are non-mandatory and non-exclusive: the district court is free to consider other facts in assessing whether disgorgement of profits would be equitable, just as it may exercise discretion in weighing the individual factors.
> The second consideration is whether the defendant's profits are attributable to the Lanham Act violation.

*Id.* at 876.

On the facts presented, the Court finds that Guel's profits were attributable to his infringement of the YETI mark, and that the *Pebble Beach* factors support a finding that disgorgement is equitable. This is a case of palming off, and by selling the stolen YETI-branded goods, Guel had the intent to confuse or deceive consumers as to the source of the goods. The public has a strong interest in making such misconduct unprofitable. And because there is no evidence that the stolen goods were purchased for any reason other than Guel's infringement of the YETI marks, Guel's

11

profits are attributable to his Lanham Act violations. The Court finds that Yeti's evidence supports its request for actual damages, and that disgorgement of Guel's $260,000 in gross revenue is equitable. The Court recommends that the District Court award Yeti $260,000 in disgorgement of Guel's revenue.

## IV.    Recommendation

Theis Magistrate Judge **RECOMMENDS** that the District Court **GRANT IN PART and DENY IN PART** Plaintiff Yeti Coolers, LLC's Motion for Default Judgment with Respect to Defendant Oscar Guel (Dkt. 45) and **ENTER JUDGMENT** in favor of Plaintiff Yeti Coolers, LLC against Oscar Guel on Yeti's claims for trademark infringement under 15 U.S.C. § 1114, false designation of origin under 15 U.S.C. § 1125(a)(1), and unfair competition under Texas common law.

The Court further **RECOMMENDS** that the District Court **GRANT** Plaintiff's request for entry of a permanent injunction.

The Court further **RECOMMENDS** that the District Court **ORDER** Guel to disgorge $260,000 in revenue pursuant to 15 U.S.C. § 1117(a) and return all YETI-branded goods in his possession, custody, or control.

It is **ORDERED** that the Clerk **REMOVE** this case from this Magistrate Judge's docket and **RETURN** it to the docket of the Honorable David A. Ezra.

## V.    Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written

objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on January 24, 2024.

_____
SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE