UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| YETI Coolers, LLC, | § | No. 1:22-CV-01337-DAE |
| *Plaintiff*, | § | |
| | § | |
| vs. | § | |
| | § | |
| Mercatalyst, Inc., TerraCycle US, | § | |
| LLC, Akshar Plastic, Inc., Devang H. | § | |
| Patel, Oscar Guel, Robert N. Rezak, | § | |
| Global Xcessories, Inc., and Daniel | § | |
| Gavrielov, | § | |
| *Defendants*. | § | |

ORDER ADOPTING IN PART AND VACATING IN PART U.S. MAGISTRATE
JUDGE HIGHTOWER'S  REPORT AND RECOMMENDATION

Before the Court is U.S. Magistrate Judge Hightower's Report and

Recommendation ("Report"), issued on January 24, 2024, granting Plaintiff

YETI's Motion for Default Judgment with Respect to Defendant Oscar Guel.

(Dkt. # 99.)  Guel has not objected to the findings or recommendations made by

Judge Hightower.

The Court finds this matter suitable for disposition without a hearing.

After careful consideration, the Court— for the reasons that follow— **ADOPTS**

**IN PART and VACATES IN PART** Judge Hightower's Report.

<u>BACKGROUND</u>

In 2021, YETI considered adding outerwear to its product line. (Dkt. # 29 at ¶ 2.) As part of that process, YETI obtained thousands of YETI-branded down feather vests and jackets.  (<u>Id.</u>)  But after further testing and analysis, YETI decided not to take the jackets to market.  (<u>Id.</u>)  At the same time, YETI needed to recycle and destroy thousands of YETI branded backpacks and tote bags that were at the end of their sales lifecycles and ready to be replaced with new styles. (<u>Id.</u> at ¶ 3.)

For these reasons, YETI contracted with TerraCycle US, LLC ("TerraCycle") for the jackets, backpacks, and tote bags to be destroyed and recycled. (<u>Id.</u>)  On March 16, 2021, YETI entered into a Materials Recycling Program Agreement (the "Agreement") with TerraCycle for the sustainable destruction and recycling of jackets, backpacks, and totebags.  (<u>Id.</u> at ¶ 44.)  Under the Agreement, YETI gave TerraCycle, and by extension, Akshar Plastic, Inc. ("Akshar") and Devang H. Patel, control of the YETI-branded goods for the sole purpose of destroying them. (<u>Id.</u>)

Unbeknownst to YETI, thousands of YETI branded jackets, backpacks, and tote bags allegedly wound up in the possession of various unauthorized entities and individuals across the country.  The unauthorized entities

and individuals allegedly resold the products without the consent of YETI. (Id. at ¶ 5.)

YETI alleges that Oscar Guel has engaged in multiple illicit transactions with Akshar and Patel. (Id. at ¶ 28.)  YETI contends that Guel was allegedly the first person to negotiate with Akshar and Patel to facilitate the illicit transactions, by selling the YETI-branded goods across multiple states.  (Id. at ¶ 63.)  YETI sued Defendant Oscar Guel for trademark infringement and dilution and false designation of origin  under federal law, and for unfair competition and conversion under state common law.  (Id. at ¶ 108-156.)

YETI served its First Amended Complaint on Guel on May 4, 2023. (Dkt. # 35.)  Guel has made no appearance and failed to properly plead, respond, or otherwise defend.  On June 9, 2023, the clerk of court granted YETI's motion for an entry of default. (Dkt. # 38.)  YETI then moved for default judgment against Guel, a permanent injunction, return of all YETI goods in his possession, and disgorgement of $260,000 in revenue. (Dkt. # 45 at 25.)

## LEGAL STANDARD

The Court must conduct a de novo review of any of the Magistrate Judge's conclusions to which a party has specifically objected.  See 28 U.S.C. § 636(b)(1)(C) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which

objection is made.").  The objections must specifically identify those findings or recommendations that the party wishes to have the district court consider. Thomas v. Arn, 474 U.S. 140, 151 (1985).  A district court need not consider "[f]rivolous, conclusive, or general objections."  Battle v. U.S. Parole Comm'n, 834 F.2d 419, 421 (5th Cir. 1987).  "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C).

However, a party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. See 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140, 150-53 (1985); Douglass v. United Servs. Auto. Ass'n,  79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc). In this case, Guel has not filed a written objection within 14 days after service of Judge Hightower's Report.  YETI also filed a notice of no objection to Judge Hightower's Report.  (Dkt. # 101.)

Under Rule 55 of the Federal Rules of Civil Procedure, a default occurs when a defendant fails to plead or otherwise respond to a complaint within

the time required.  FED. R. CIV. P. 55; New York Life Ins. Co. v. Brown, 84 F.3d 137, 141 (5th Cir. 1996).  After the defendant's default has been entered by the clerk of court, the plaintiff may apply for a judgment based on the default.  Id. Even when the defendant technically is in default, however, a party is not entitled to a default judgment as a matter of right.  Escalante v. Lidge, 34 F.4th 486, 492 (5th Cir. 2022).  There must be a sufficient basis in the pleadings for the judgment entered. Wooten v. McDonald Transit Assocs., Inc., 788 F.3d 490, 498 (5th Cir. 2015).  Entry of default judgment is within the court's discretion. See Stelly v. Duriso, 982 F.3d 403, 406 (5th Cir. 2020); Lindsey v. Prive Corp., 161 F.3d 886, 893 (5th Cir. 1998).

## DISCUSSION

I.    Jurisdiction

In a Report and Recommendation issued August 16, 2023, Judge Hightower found that YETI had not established the Court's personal jurisdiction over Guel and recommended that the District Court deny YETI's motion for default judgment.  (Dkt. # 74 at 5-6.)  On November 27, 2023, this Court issued an Order denying a motion to dismiss for lack of personal jurisdiction filed by Defendants Akshar Plastic, Inc. and Devang H. Patel, finding that the Court may exercise personal jurisdiction over Defendants under the stream of commerce doctrine.  (Dkt. # 83 at 24.)  On December 1, 2023, this Court declined to adopt

Judge Hightower's Report as to default judgment against Guel, finding that YETI had established personal jurisdiction over Guel for some of the claims. (Dkt. # 92.) The Court concluded: "The infringing sales in Texas arise out of Guel placing the goods into the stream of commerce. Because the infringing sales in Texas were foreseeable, the Court may exercise personal jurisdiction over Guel under the stream of commerce doctrine." Id. at 12. Thus, while this Court found that it does not have jurisdiction over YETI's conversion claim, it concluded that it did have proper jurisdiction over the following claims: (i) trademark infringement in violation of 15 U.S.C. § 1114; (ii) unfair competition, false designation of origin of Guel's goods and services, and/or false advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a); (iii) trademark dilution under 15 U.S.C. § 1125(c); and (iv) unfair competition pursuant to common law. Id. at 14-15. This Court then referred to Judge Hightower whether YETI can now recover a default judgment against Guel for the remaining claims. Id. at 15.

## II.   Default Judgment

Courts have developed a three-part test to determine whether to enter a default judgment. United States v. 1998 Freightliner Vin #: 1FUYCZYB3WP886986, 548 F. Supp. 2d 381, 384 (W.D. Tex. 2008). First, the court considers whether entry of default judgment is procedurally warranted. Id. Second, the court assesses the substantive merits of the plaintiff's claims to

determine whether there is a sufficient basis in the pleadings for judgment.  <u>Id</u>.

Finally, the court determines what relief, if any, the plaintiff should receive.  Id.

### A. <u>Procedurally Warranted</u>

In determining whether a default judgment is procedurally warranted,

courts in the Fifth Circuit consider these factors:

> 1) whether material issues of fact are at issue;
> (2) whether there has been substantial prejudice;
> (3) whether the grounds for default are clearly established;
> (4) whether the default was caused by a good faith mistake or
> excusable neglect;
> (5) the harshness of a default judgment; and
> (6) whether the court would think itself obliged to set aside the default
> on the defendant's motion.

<u>Lindsey</u>, 161 F.3d at 893.

Judge Hightower found that default judgment is procedurally

warranted.  The Court agrees with Judge Hightower's analysis.  As Judge

Hightower noted, Guel has not filed an answer or any responsive pleadings and

there are no material facts in dispute.  <u>Nishimatsu Constr. Co. v. Houston Nat'l</u>

<u>Bank</u>, 515 F.2d 1200, 1206 (5th Cir. 1975) (stating that "[t]he defendant, by his

default, admits the plaintiff's well-pleaded allegations of fact").  Second,

"Defendant's failure to respond threatens to bring the adversary process to a halt,

effectively prejudicing Plaintiff's interests." <u>Ins. Co. of the W. v. H & G</u>

<u>Contractors, Inc.</u>, No. CV: 10-390, 2011 WL 4738197, at *3 (S.D. Tex. Oct. 5,

2011).  Third, the grounds for default are "clearly established," as Guel was

properly served but has not responded.  Fourth, because Guel has failed to appear, the Court can find no good-faith mistake or excusable neglect on his part.  Fifth, a default judgment for disgorgement of the gross revenue from the sale of stolen goods is not "harsh" in a trademark case, and the Court is unaware of any facts giving rise to good cause to set aside default judgment in this case if challenged by Guel.  Accordingly, the Court agrees that Judge Hightower did not err by finding that the default judgment is procedurally warranted.

### B. Sufficiency of Plaintiff's Complaint

Next, the Court must assess the substantive merits of YETI's claim and determine whether there is a sufficient basis in the pleadings for the judgment requested.  Default judgment is proper only if the well-pleaded factual allegations in YETI's Amended Complaint establish a valid cause of action.  Courts are to assume that by its default, the defendant admits all well-pleaded facts in the plaintiff's complaint.  Nishimatsu, 515 F.2d at 1206; see also United States v. Shipco Gen., Inc., 814 F.2d 1011, 1014 (5th Cir. 1987) ("After a default judgment, the plaintiff's well-pleaded factual allegations are taken as true, except regarding damages.").  But the defendant "is not held to admit facts that are not well-pleaded or to admit conclusions of law.  In short . . . a default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover." Nishimatsu, 515 F.2d at 1206.

In determining whether factual allegations are sufficient to support a default judgment, the Fifth Circuit employs the same analysis used to determine sufficiency under Federal Rule of Civil Procedure 8.  Wooten, 788 F.3d at 498.  A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).  The factual allegations in the complaint need only "be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  Wooten, 788 F.3d at 498 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  While detailed factual allegations are not required, the pleading must present "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  Id. (Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). The Court considers whether there is sufficient basis in YETI's pleadings for judgment as to (1) trademark infringement (15 U.S.C. § 1114); (2) unfair competition, false advertising, false association, and/or false designation of origin (15 U.S.C. § 1125(a)(1)(A)); (3) trademark dilution (15 U.S.C. § 1125(c)); and (4) unfair competition.

    i. <u>Trademark Infringement under Section 32 of the Lanham Act, 15 U.S.C. § 1114, and Unfair Competition under Texas Common Law</u>

Claims for unfair competition under Texas common law are analyzed under the same standard as trademark infringement under the Lanham Act, and

courts often analyze these claims together. See Amazing Spaces, Inc. v. Metro Mini Storage, 608 F.3d 225, 235 n.7 (5th Cir. 2010) ("A trademark infringement and unfair competition action under Texas common law presents essentially 'no difference in issues than those under federal trademark infringement actions.'") (quoting Horseshoe Bay Resort Sales Co. v. Lake Lyndon B. Johnson Imp. Corp., 53 S.W.3d 799, 806 n.3 (Tex. App.—Austin 2001, pet. denied)); Mott's LLP v. Comercializadora Eloro, S.A., 507 F. Supp. 3d 780, 792 (W.D. Tex. 2020) (same). To prevail on these claims, YETI must show that (1) it possesses a legally protectable trademark, and (2) Guel's use of the mark creates a likelihood of confusion as to source, affiliation, or sponsorship.  Streamline Prodn. Sys. v. Streamline Mfg., 851 F.3d 440, 450 (5th Cir. 2017).

As Judge Hightower noted, YETI alleges that it owns legally protectable rights in the mark YETI for bags and apparel.  (Dkt. # 29 ¶ 33–40.) YETI also alleges that Guel's unauthorized use of the YETI mark is likely to cause confusion or mistake, to deceive, or to cause those encountering the unauthorized YETI-branded goods to believe that the goods originate from or are in some manner endorsed, sponsored, or approved by YETI.  (Id. ¶¶ 110, 137.)  These allegations state claims for trademark infringement under 15 U.S.C. § 1114 and unfair competition under Texas common law.

   ii.  <u>False Designation of Origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A)</u>

A plaintiff must prove five elements to establish false designation of origin under Section 43(a): (1) the defendant made a false or misleading statement of fact about its product or service; (2) the statement either deceived or had the capacity to deceive a substantial segment of potential customers; (3) the deception was material, in that it was likely to influence consumers' purchasing decision; (4) the product or service is in interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the statement at issue.  Nestle USA, Inc. v. Ultra Distribruciones Mundiales S.A. de C.V., 516 F. Supp. 3d 633, 650–51 (W.D. Tex. 2021).

Judge Hightower found that YETI has alleged each of these elements in its Amended Complaint (Dkt. # 29 ¶¶ 33, 36, 115, 117) and has sufficiently alleged its claim under 15 U.S.C. § 1125(a)(1)(A).  (Dkt. # 99 at 12.)

The Court agrees. For its False Designation of Origin claim, YETI alleges: Defendants' unauthorized sale of the YETI-branded goods constitutes a false designation of origin and a false or misleading representation of fact.   This was likely to cause confusion and/or mistake and is likely to deceive customers and potential customers as to the source, origin, sponsorship, and affiliation of the goods sold by Defendants.

These allegations are not conclusory.  Rather, YETI has alleged with specificity how the YETI products entered the marketplace through deception and the injury that it has caused the company.

      iii.    Trademark Dilution under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c)

A trademark dilution claim requires four elements: (1) the plaintiff owns a famous and distinctive mark; (2) the defendant has begun using the senior mark after it became famous; (3) similarity between the senior mark and junior mark causes association between the two; and (4) the association is likely to impair the distinctiveness or harm the reputation of the plaintiff's mark.  Nola Spice Designs, L.L.C. v. Haydel Enters., Inc., 783 F.3d 527, 548 (5th Cir. 2015).

Judge Hightower's Report states that YETI satisfies the first, third, and fourth elements by alleging that the YETI mark is distinctive and famous, (Dkt. # 29 ¶ 119), and that "Defendants' actions have and are likely to continue to dilute, blur and tarnish the distinctive quality of the YETI Marks, and lessen the capacity of the YETI Marks to identify and distinguish the company's products." (Id. at ¶ 122.)   Judge Hightower found that YETI does not allege that Guel began using the YETI mark after it became famous.  Because it has not satisfied the second element, YETI has not stated a sufficient claim for trademark dilution under 15 U.S.C. § 1125(c).

Of note, YETI provided notice to this Court that it does not object to Judge Hightower's finding on the Trademark dilution claim.  Specifically, YETI does not object that it failed to specifically plead the timing of the trademark dilution occurred after the mark became famous.  The Court also sees no error in Judge Hightower's reading of the Complaint and therefore will adopt her recommendation on Trademark Dilution under Section 43(c) of the Lanham Act.

III.   <u>Relief</u>

A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."  FED. R. CIV. P. 54(c).  YETI seeks a permanent injunction and an award of $260,000.

A. <u>Permanent Injunction</u>

YETI asks the Court to permanently enjoin Guel, his distributors, retailers, agents, employees, representatives, and all persons acting in concert with him, from:

1. using or attempting to use any of the YETI intellectual property, including but not limited to the YETI Marks;
2. engaging in any false or misleading advertising with respect to YETI®-Branded Goods, which relief includes but is not limited to prohibiting the offer for sale or sale of any YETI®-Branded Goods;
3. retaining, acquiring, or taking steps to acquire any YETI®-Branded Goods;
4. advertising, selling, or taking any steps to sell any YETI®-Branded Goods;

5. engaging in any activity constituting unfair competition with YETI; and

6. inducing, assisting, or abetting any other person or entity in engaging in or performing any of the business activities described in the paragraphs above.

(Dkt. # 45 at 25.)

Section 34(a) of the Lanham Act permits a court to "grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable," to prevent trademark infringement or false designation of origin. 15 U.S.C. § 1116(a).  A plaintiff seeking such an injunction "shall be entitled to a rebuttable presumption of irreparable harm" on a finding of a violation.  Id.  A plaintiff seeking a permanent injunction generally must satisfy a four-factor test: (1) the plaintiff has suffered an irreparable injury; (2) remedies available at law, such as monetary damages, are inadequate compensation; (3) considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) a permanent injunction would not disserve the public interest. eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006).  The requirements of irreparable injury and no adequate remedy at law often are indistinguishable. Lewis v. S. S. Baune, 534 F.2d 1115, 1124 (5th Cir. 1976).

Judge Hightower found that all four factors favor a permanent injunction.  The Court agrees.  As Judge Hightower noted, YETI is entitled to a presumption that it has suffered an irreparable injury because it has shown violations of the Lanham Act. 15 U.S.C. § 1116(a).  Moreover, monetary damages

cannot remedy the damage to YETI by Guel's conduct in causing consumer confusion and "debasing the YETI brand and damaging the reputation and goodwill associated with its long-standing and famous marks."  (Dkt. # 29 ¶ 102.) The balance of equities weighs heavily in YETI's favor, as Guel trafficked goods stolen from YETI.  Finally, the public interest would be served by granting a permanent injunction, protecting consumers from purchasing stolen and infringing goods. See EKF Diagnostics Inc. v.  Intermountain Biomedical Servs. Inc., No. 5:18-CV-195-DAE, 2018 WL 3603070, at *14 (W.D. Tex. June 18, 2018) (stating that "[t]he public interest is always served by requiring compliance with Congressional statutes such as the Lanham Act and by enjoining the use of infringing marks") (citation omitted).  For the foregoing reasons, the Court grants YETI a permanent injunction on Guel.

      B. <u>Defendant's Profits</u>

      As a general rule, courts may enter a default judgment awarding damages without a hearing only if the amount of damages is a liquidated sum, an amount capable of mathematical calculation, or an amount demonstrated by detailed affidavits.  James v. Frame, 6 F.3d 307, 310 (5th Cir. 1993); United Artists Corp. v. Freeman, 605 F.2d 854, 857 (5th Cir. 1979).  It is a matter within the court's discretion whether to hold a hearing before awarding damages in a default judgment. See FED. R. CIV. P. 55(b)(2) (stating that the court "may conduct

hearings" when it needs to conduct an accounting or determine the amount of damages); <u>James</u>, 6 F.3d at 310 (district court has wide latitude in deciding whether to require evidentiary hearing before entering default judgment).

Under Section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a), a trademark registrant may be entitled to recover profits from a defendant who has violated any of its rights, subject to principles of equity. "Once an award is found to be appropriate, a markholder is only entitled to those profits attributable to the unlawful use of its mark." <u>Quick Techs., Inc. v. Sage Grp. PLC</u>, 313 F.3d 338, 349-50 (5th Cir. 2002) (quoting <u>Pebble Beach Co. v. Tour 18 Ltd.</u>, 155 F.3d 526, 554 (5th Cir. 1998)). Section 35(a) provides that the plaintiff is required to prove the defendant's sales only, while the defendant "must prove all elements of cost or deduction claimed." 15 U.S.C. § 1117(a).

YETI alleges and offers evidence that Guel received $260,000 in gross revenues for selling stolen YETI-branded goods, comprising 2,500 backpacks, 2,200 jackets, and 3,580 tote bags. (Declaration of Enrique Loza, Dkt. # 45-1 ¶¶ 5-8.) This amount is shown by a detailed declaration. <u>Id.</u>; <u>United Artists</u>, 605 F.2d at 857. YETI estimates that Guel paid $135,799.20 for the stolen goods, yielding a profit of $124,200.80. (Dkt. # 45-2.) YETI alleges that the original suggested retail value of the stolen backpacks and tote bags alone

exceeded $1 million.  (Dkt. # 29 ¶ 64.)  YETI asks for disgorgement of Guel's gross revenue or, in the alternative, an award of his estimated profits.

As Judge Hightower noted, there are two considerations in assessing whether disgorgement is appropriate.  Retractable Techs., Inc. v. Becton Dickinson & Co., 919 F.3d 869, 875-76 (5th Cir. 2019).  The court must first consider whether disgorgement is equitable under the six factors set forth in Pebble Beach Co. v. Tour 18 I Ltd.:

> (1) whether the defendant had the intent to confuse or deceive, (2) whether sales have been diverted, (3) the adequacy of other remedies, (4) any unreasonable delay by the plaintiff in asserting his rights, (5) the public interest in making the misconduct unprofitable, and (6) whether it is a case of palming off.

155 F.3d 526 (5th Cir. 1998).

The Pebble Beach factors are non-mandatory and non-exclusive; the district court is free to consider other facts in assessing whether disgorgement of profits would be equitable, just as it may exercise discretion in weighing the individual factors.  Retractable Techs., 919 F.3d 869 at 876 (5th Cir. 2019).)  After considering whether disgorgement is equitable, the court must determine whether the defendant's profits are attributable to the Lanham Act violation.

Based on the Pebble Beach factors, Judge Hightower found that Guel's profits were attributable to his infringement of the YETI mark.  (Dkt. # 99 at 11.) Judge Hightower noted this is a case of palming off, and by selling the stolen YETI-branded goods, Guel had the intent to confuse or deceive consumers as to the source

of the goods.  (Id.)  The Court agrees with Judge Hightower's conclusion.  As she also recognized, the public has a strong interest in making such misconduct unprofitable.  And because there is no evidence that the stolen goods were purchased for any reason other than Guel's infringement of the YETI marks, Guel's profits are attributable to his Lanham Act violations.

The Court has discretion to adjust an award of profits as is equitable. As already stated, the Lanham Act places the burden on the defendant to prove all elements of cost or deduction claimed. 15 U.S.C. § 1117(a). See also Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co., 316 U.S. 203, 206-07 (1942) ("The burden is the infringer's to prove that his infringement had no cash value in sales made by him."); Am. Rice, Inc. v. Producers Rice Mill, Inc., 518 F.3d 321, 337 (5th Cir. 2008) ("[T]he Act allows the plaintiff to recover the defendant's profits based on proof of the defendant's sales. Once the plaintiff establishes the defendant's sales, then it is the defendant's burden to prove all elements of cost or deduction claimed."). Because Guel defaulted in this suit, YETI was not able to calculate Guel's profits with certainty.

However, many Courts fashion equitable relief notwithstanding a Defendant's failure to prove costs.  These courts rely on estimations of costs and deduct them from gross sales to avoid imposing punitive sanctions on the infringer. See Choice Hotels Int'l, Inc. v. Fisher, No. 2:13-cv-23, 2015 WL 12748029, at *7

(N.D. W. Va. Apr. 1, 2015) (explaining that, even where "the defendant has failed to provide any evidence ... [of] any cost deductions," the court "will not award th[e] full amount" "of the defendant's estimated gross sales," because doing so would "produce results that are ... punitive in nature"); Muhler Co., Inc. v. Window World of N. Charleston LLC, No. 2:11-cv-00851-DCN, 2014 WL 4269078, at *7 (D.S.C. Aug. 28, 2014) (explaining that, even where infringer "provided no evidence to establish any costs or deductions from gross revenues," an award of all gross revenues "does not take into account [the infringer]'s profit margin" and "would almost certainly penalize [the infringer] instead of compensating [the trademark owner]," and, thus, "a reasonable approximation" was appropriate); Nutrividia, Inc. v. Inmuno Vital, Inc., 46 F. Supp. 2d 1310, 1316 (S.D. Fla. 1998) (estimating $1 million as deductible costs for both advertising and telemarketing despite infringer offering insufficient documentary evidence for these costs); Colonial Williamsburg Found. v. Kittinger Co., 792 F. Supp. 1397, 1407-08 (E.D. Va. 1992) (explaining that, although "[t]he burden of proof rests on the defendants to prove any deductions for its costs from the gross revenues attributable to its contempt," "it would be inequitable and unnecessarily excessive to force the defendants to repay all revenues derived from the sale of [the offending p]roducts," as the contemnor "certainly incurred substantial overhead in the production of the [offending p]roducts" (internal quotation marks omitted)).   Indeed, the Court is unaware of case law supporting the

return of revenue as opposed to profits.  See, e.g., Tex. Tech. v. Spiegelberg, 461 F.Supp.2d 510, 526 (N.D. Tex. 2006) (allowing the recovery of gross profit when Defendant failed to provide evidence of deductions).

In this case, YETI estimated profits based on Guel's wire transfers to Akshar near the time of receiving payments from Loza.  (Dkt. # 99 at 11.)  Based on this assessment, Guel paid Akshar a total of $135,799.20 at or near the time of the payments from Loza for the stolen YETI goods. (Id.) While Guel failed to prove his costs, the Court has discretion to fashion an appropriate remedy.  In this case, the wire transfers estimate an equitable remedy.  Therefore, Court orders Guel to disgorge $124,200.80 of the estimated profits.

## CONCLUSION

For the foregoing reasons, the Court **ADOPTS IN PART** Judge Hightower's Report.  The Court **ENTERS JUDGMENT** in favor of Plaintiff YETI Coolers, LLC against Oscar Guel on YETI's claims for trademark infringement under 15 U.S.C. § 1114, false designation of origin under 15 U.S.C. § 1125(a)(1), and unfair competition under Texas common law. The Court **GRANTS** YETI's request for entry of a permanent injunction.  The Court **ORDERS** Guel to disgorge $124,200.80 of the estimated profits pursuant to 15 U.S.C. § 1117(a) and return all YETI-branded goods in his possession, custody, or control.

**IT IS SO ORDERED.**

DATED: Austin, Texas, March 21, 2024

_____

David Alan Ezra
Senior United States District Judge